## BRUNSWICK & WESTERN RAILROAD CO. *v.* PONDER.

1. A railroad company is bound to use extraordinary diligence to protect a passenger, while in transit, from violence or injury by third persons; but where the passenger is arrested by officers of the law, the company is under no duty to inquire into the legality of the arrest.

2. Where such arrest by officers of the law is illegal but the railroad company has no notice of that fact, the company is not liable to the passenger for a failure to interfere with the officers and prevent the arrest, or for stopping the train to allow the officers to remove their prisoner therefrom.

3. In such a case the company is under no duty to see that the officers use only such force as is necessary to make the arrest.

Argued January 13, — Decided February 7, 1903.

Action for damages. Before Judge Reynolds. City court of Waycross. July 11, 1902.

*W. E. Kay, S. W. Hitch,* and *John C. McDonald,* for plaintiff in error. *John T. Myers,* contra.

SIMMONS, C. J. Sometime in June, 1901, Ponder boarded a passenger-train of the Brunswick & Western Railroad Company at Fairfax, Georgia. He paid his fare to Waycross. When the train stopped at Waresboro, a station intermediate between Fairfax and Waycross, three men boarded the train, assaulted Ponder, and removed him from the train. After settling for a small sum his claims against the individuals who assaulted him, Ponder brought suit against the railroad company for its failure to protect him. The jury returned a verdict for the plaintiff for $500. The com-

pany moved for a new trial, the judge overruled the motion, and
the company excepted.   The evidence shows that when the train
stopped at Waresboro the conductor stepped off to assist the pas-
sengers who were getting on or off.   While he was so engaged,
three men boarded the train to arrest Ponder, entering the train at
a point other than that at which the conductor was standing.   One
of these men was marshal of the town of Waresboro, another was
the deputy-marshal, and the third was specially deputized by the
marshal to assist in making the arrest.   They had no warrant, and
seem to have arrested Ponder for having failed to pay one of them
a debt.   They ordered him to get off of the train with them, and,
upon his refusal, began to strike and beat him.   At this juncture
the conductor came in and discovered, for the first time, that the
officers were on the train making an arrest.   He took hold of one
of them and remonstrated with them all, suggesting that they go
on to Waycross, the train having already started.   This they re-
fused to do, ordering the conductor to stop the train.   The con-
ductor, when he came in, had heard Ponder tell the officers that
he had paid them all he owed them; but the conductor made no
investigation as to the charge against Ponder, and did not try to
ascertain whether the officers had a warrant.   He knew that the
officers were such, and they had on former occasions arrested per-
sons on his train and taken them off.   Upon their demand he had
the train stopped before it had left the corporate limits of the ·
town.   The officers and Ponder then left the train.   The motion
for new trial complains that the verdict is contrary to the evidence
and without evidence to support it, and that the court erred in cer-
tain charges and refusals to charge.   Our idea of the law of the case,
as given below, covers these assignments of error, and we will not
deal with them separately.

º 1. A railroad company is bound to use extraordinary care and
diligence to protect its passengers, while in transit, from violence
or injury by third persons.   If a third person boards the train and
assaults a passenger, it is the duty of the railroad company to use
extraordinary care to protect the passenger, and in this State the
conductor of a train carrying a passenger is invested with all the
powers of a police officer.   Penal Code, § 902.   At the same time,
a conductor would not be justified in interfering with the lawful
arrest of one who happened to be a passenger on his train.   This

much is clear. The present case, however, falls within an intermediate class. The arrest of Ponder was not a lawful one, but of this fact the officers of the railroad company had no notice. The arrest was made by officers of the law, acting under color of their office, and we think the company was under no duty to inquire into the legality of the arrest. The arrest was apparently regular, and, in the absence of any knowledge or notice to the contrary, the officers and agents of the company could assume that it was lawful. The conductor knew that the men making the arrest were officers, and he had previously had passengers on his train arrested by them and removed from the train. While the officers were attempting to arrest Ponder, the latter told them in the hearing of the conductor that he had paid them all he owed them. This was not of itself sufficient to put the conductor on notice that the arrest was for a debt. So far as he knew, it was a claim by Ponder that he had restored all of the money which he had acquired by the commission of some crime with which he was charged, or that he had attempted illegally to settle some criminal prosecution. The arresting officers had no warrant, but in this State an officer may arrest without warrant an offender who is attempting to escape. Further than this, the conductor did not know of the absence of a warrant, and Ponder did not raise that question or represent to the conductor that the arrest was unlawful or unauthorized.

2. The conductor made a decided effort to quiet the disturbance on the train and to stop the assaults on Ponder. One of the plaintiff's witnesses testified that the conductor did all that he could have done. However this may be, we think the failure of the conductor to interfere with the officers and prevent the arrest did not give Ponder any cause of action against the company. It is essential to the maintenance of the law that its processes should be promptly executed and its officers allowed to proceed without interference, except in cases where such interference is clearly justified. It would never do to allow a railroad conductor to interfere with officers of the law and prevent arrests by them merely because he did not know whether or not they were acting within their power and authority. If the conductor had knowledge that the arrest was unlawful, then it would be his duty to use extraordinary diligence to prevent it and protect the passenger, but even in that case the company would not be an insurer against such arrest. If

the conductor had notice that the arrest was wrongful, it would be his duty to make inquiry into the matter.   But where the arrest is by officers of· the law and is apparently regular, and there is nothing to put the company on notice that the arrest is illegal, the company can not be held liable for a failure to interfere with the officers and prevent the arrest.   It was argued that the conductor had also actively aided in the arrest, by stopping his train to enable the officers to remove their prisoner.   This is answered by what has been said above.   The conductor was ordered to stop the train, and, as he had a right to presume that the arrest was legal, his obeying the command of the officers was no breach of duty to the passenger.   An officer may stop a train to make an arrest of a person thereon.   St. Johnsbury etc. R. Co. *v.* Hunt, 60 Vt. 588, 38 Am. & Eng. R. Cas. 307, 18 L. R. A. 189, 6 Am. St. Rep. 138. And certainly an officer may, after having made the arrest, stop the train to remove his prisoner.   It would have been an interference with the officers to have carried them on out of their town while they were endeavoring to make an arrest within it.   In this particular case it further appears that, at the 'time the train stopped upon the command of the officers, Ponder had ceased resisting and agreed to get off.

3.  One other question remains : Was the railroad company liable for allowing the arresting officers to use more force than was necessary to make the arrest ?   Ponder appears to have been considerably beaten and bruised, and the evidence would warrant a finding that more force was used to make the arrest than was necessary, and that this was evident to the conductor or to any one else who was present.   It was argued that, even if the company was under no duty to prevent the arrest, it was still liable for not seeing to it that no unnecessary force was used.   In the first place the conductor seems to have done what he could to prevent this, and but little force was used after he arrived upon the scene, the violent assaults having occurred before he discovered what was going on or had time to take part.   Nor is there any evidence of negligence on the part of the company's agents in not sooner discovering that the officers were on the train endeavoring to arrest Ponder.   Then, too, if our conclusion be correct that the conductor could assume that the arrest was a lawful one and was under no duty to prevent it, we think the company can not be held liable for

the excessive force used. Ponder became the prisoner of the officers as soon as they laid hold on him and before he was removed from the train. He was taken out from under the protection of the conductor as against the officers of the law. He was then in the custody of the law, and, whether or not the conductor or any one else was authorized to prevent the use of unnecessary force in making the arrest, the railroad company was in this regard no longer under any duty to him as a passenger. See, in this connection, Jardine v. Cornell, 50 N. J. L., 485, 34 Am. & Eng. R. Cas. 307.

*Judgment reversed. By five Justices.*