## BALDWIN *v.* SEABOARD AIR-LINE RAILWAY.

A passenger on a railway train, who had paid his fare to a given city which was under quarantine regulations, and who when near the end of his journey left the train at a station on the railway line, in obedience to the order of a quarantine or health officer, who told him that he would not be allowed to ride on the train into the city, but must leave it at that station, has no cause of action against the railway company for a wrongful expulsion from its train, although the conductor pointed him out to the health officer and, after knowledge of such officer's order to the passenger, did not interfere to prevent its execution.

Argued May 22,—Decided July 9, 1907.

Action for damages.   Before Judge Little.   Chattahoochee superior court.   June 4, 1906.

Gale Scott Baldwin brought an action against the Seaboard Air-Line Railway, to recover damages.   The petition made the following allegations:   In September, 1905, the plaintiff purchased from the defendant, in the City of Albany, Ga., a ticket entitling him to ride on its passenger train from that city to Columbus, Ga.   He boarded defendant's train at Albany, and the conductor thereof accepted his ticket for his transportation to Columbus.   When the train approached Sulphur Springs, in Chattahoochee County, an agent of the defendant, who was riding on the train, notified the plaintiff that he must leave the train at that station, and that he would not be allowed to ride the remainder of the distance into Columbus; and when the train arrived at Sulphur Springs this agent of the defendant ordered him to leave the train; "and in obedience to said order he did so, and was not allowed by the defendant to ride any further on said train."   The conductor of the train knew that said other agent of said defendant had ordered . . petitioner to leave said train, and in fact pointed out [petitioner] to said agent as a person to be ejected from said train, and failed to interfere and prevent the said agent from "ejecting" him.   By reason of his ejection from the train, the petitioner was put to great inconvenience and trouble, and subjected to great personal annoyance, and was compelled to walk a long distance to another railroad for the purpose of getting to his destination.   The expulsion of petitioner from the train was with the consent and approval of the conductor, who failed and refused to protect him, and such expulsion was without fault on the part of petitioner.   When petitioner applied at the office of defendant in Albany for a ticket from that place to Columbus, Ga., he was notified by the ticket agent that before purchasing a ticket it would be necessary for him to have a health certificate.   Petitioner thereupon "applied to the health officer in the City of Albany and produced evidence to show that he was in good health and had not been exposed during the ten days preceding said date to the infection of yellow fever, and had not been in any infected or suspected locality for ten days; and . . procured from said health officer the certificate," which he alleges was in due form, and a copy of which he attaches to his petition.   He exhibited this

certificate to the ticket agent of defendant, and thereupon the agent sold him the ticket from Albany to Columbus. When he was approached "by the said officer who expelled him from said train, . and asked for a health certificate, he produced said certificate and exhibited the same to said officer and to said conductor;" and "it was the duty of said conductor and said officer to have passed him on said certificate into the City of Columbus, and his expulsion from said train, as hereinbefore set forth, was wrongful and unjustifiable;" and he has thereby been injured and damaged in the sum of $2,000. A copy of the health certificate in question was set forth in petition.

The petition was demurred to upon various grounds, and the petitioner thereupon, with leave of the court, amended it. The amendment alleged: The person who notified petitioner that he must leave the train at Sulphur Springs and that he would not be allowed to ride thereon into the City of Columbus, and who, when the train arrived at Sulphur Springs, ordered him to leave it, claimed to act as a quarantine officer, but was unknown to petitioner, who "does not admit" that this person was a quarantine officer. The person "claiming to act as a quarantine officer" ordered petitioner to leave the train, "notwithstanding the fact that [he] exhibited to said person and to said conductor his health certificate as set out in full" in the original petition, "which entitled him to ride on said train into the City of Columbus." The "conductor negligently refused to interpose in any way to prevent . . petitioner from being removed from said train by said person, but on the contrary pointed out . . petitioner to said person and thereby assisted him in removing . . petitioner from said train." The conductor "made no effort whatever to protect . . petitioner, or to induce said person not to remove . . petitioner from said train, as it was his duty to do under the circumstances, but allowed him to be ejected from the train, contrary to law." After the allowance of this amendment, the defendant renewed its original demurrer, and demurred upon other grounds. One of the grounds of demurrer was, that the allegations of the petition were insufficient to set forth a cause of action. Other grounds (which were but amplifications of the general demurrer) were: "because it is apparent from said petition that the alleged 'agent' or 'officer' ordering plaintiff from the train was a

quarantine agent or officer of said State, or some duly constituted municipal authority thereof, and was not an officer or agent of defendant, nor subject to its control or direction." "It appears, by reasonable inference, that the person alleged to have ordered plaintiff off the train was an officer of said State or some duly constituted municipality thereof, acting within the scope of his authority or apparent authority and independently of defendant and its agents, and that defendant and its agents were without the power or authority to control or interfere with said officer." The court sustained the demurrers and dismissed the petition, and the plaintiff excepted.

*W. R. Hammond,* for plaintiff.

*Goetchius & Chappell,* for defendant.

FISH, C. J.    (After stating the facts.)

We think the plaintiff's petition clearly indicates that at the time of the occurrence of which he complains, quarantine regulations were in force with reference to travelers seeking to enter the City of Columbus, at least as to such travelers coming from Albany, Ga.    The petition shows that before the plaintiff purchased his ticket he was put on notice of the existence of such regulations, by the agent of the defendant, to whom he applied to purchase the ticket, as the agent notified him "that before purchasing the same it would be necessary for him to have a health certificate." In order to procure such a certificate from the Albany health officer, the plaintiff had to produce evidence to show that he had not, within the past ten days, been exposed to the infection of yellow fever, nor been in any infected or suspected locality.    As the train upon which he was riding approached the City of Columbus, an officer, claiming to be a quarantine officer, approached him and asked him for a health certificate, and plaintiff exhibited the one which he had procured in Albany to such officer, who told plaintiff that he would not be allowed to ride on the train into Columbus, but must leave it at Sulphur Springs.    These facts, alleged in the petition, clearly indicate the existence of quarantine regulations; and when to them are added the allegations, that plaintiff's health certificate "entitled him to ride on said train into the City of Columbus," and that it was the duty of "said officer to have passed him on said certificate into the City of Columbus," it seems impossible to fairly construe this petition without reaching the

conclusion that there were such regulations in force relative to persons traveling from Albany to Columbus, Ga. The petition shows that before the plaintiff purchased his ticket he had every reason to suspect that ere he reached his journey's end he would encounter a quarantine officer, and that he relied both on his railroad ticket and his health certificate for his entry into the city of his destination. While in the amendment to the petition the plaintiff was careful to allege that he did not admit that the person who ordered him to leave the train at Sulphur Springs was what such person claimed to be, a quarantine officer, yet not only do the circumstances alleged in the petition strongly tend to indicate that this was true, but, as we have seen, the plaintiff himself alleges that it was the duty of "said officer to have passed him on said certificate into the City of Columbus." The allegation that it was the duty of said officer to have passed the plaintiff into the City of Columbus, on the health certificate which he exhibited for the officer's inspection, is equivalent to an admission that such officer was a quarantine officer. Unless he was a quarantine officer, how could it have been his *duty to pass* the plaintiff into the City of Columbus, upon the evidence as to his right to enter that city afforded by the health certificate? The allegation here referred to was a direct admission that the person who ordered the plaintiff to leave the train was an "officer" of some kind, and an indirect admission that he was a quarantine or health officer, else it could not have been his duty "to have passed" the plaintiff "into the City of Columbus" upon his health certificate. Against this clearly implied admission in the original petition, we have the allegation, in the amendment thereto, that plaintiff does not admit that the person who ordered him from the train was a quarantine officer; but he did not deny that such was the fact.

The matter, then, stands thus: an officer, whose duty was such as to clearly indicate that he was a quarantine or health officer, ordered the plaintiff to leave the train, but the plaintiff neither expressly admits nor denies that such officer was a quarantine officer. As the rule is well established that pleadings are to be construed most strongly against the pleader, and the allegation from which the admission is implied was not stricken from the original petition, the plaintiff could not escape its force and effect by merely alleging that he did not admit the natural and logical deduc-

tion from such allegation. While, by an amendment to the original petition, the plaintiff could have withdrawn an allegation previously made, he could not by an amendment place his own construction upon the facts which he had alleged. After all, however, it does not really make any difference by what particular name the officer who ordered the plaintiff to leave the train be called, if his duty was such as the plaintiff alleges it to have been. He must have been a health officer, clothed with authority to pass upon the sufficiency of health certificates to entitle the holders thereof. to enter the City of Columbus, otherwise it could not have been his duty to pass the plaintiff into that city upon the health certificate which he exhibited for inspection. If he was not clothed with such authority, he owed the plaintiff simply the negative duty of non-interference with his liberty, and could not have owed him the positive duty of passing him into the City· of Columbus because he had exhibited a proper health certificate. A health officer who had authority to pass upon the sufficiency of plaintiff's health certificate to entitle him to enter Columbus had also, by necessary implication, authority to prevent him from entering such city, if the certificate, under the health regulations in force, was not such as to entitle him to do so. The case, then, resolves itself into this question: Was it the duty of the conductor to interfere to prevent a health officer, clothed with such authority, from compelling the plaintiff to leave the train before it reached the City of Columbus? *Brunswick & Western Railroad Co.* v. *Ponder,* 117 *Ga.* 63, is a case which is directly in point here. There it was held: "A railroad company is bound to use extraordinary diligence to protect a passenger, while in transit, from violence or injury by third persons; but where the passenger is arrested by officers of the law, the company is under no duty to inquire into the legality of the arrest." In the present case the conductor was not bound to contest with the health officer the propriety or legality of the exercise of his power and authority in the particular instance; as the sufficiency of the health certificate was a question for the health officer, and not for the conductor. A railroad conductor is not required, for the protection of one of his passengers, to enter into a contest with the health officer the propriety or legality of the exercise who is apparently acting within the scope of his authority. *Brunswick & Western R. Co.* v. *Ponder,* supra; Duggan *v.* Baltimore &

Ohio R. Co., 159 Pa. St. 248; Fetter on Carriers of Pas. §101. While the petition alleged that the conductor pointed the plaintiff out as a person to be ejected from the train, there is no averment that the conductor said why he pointed out the plaintiff to the health officer, or that he did anything whatever to indicate why he did so. As an allegation of fact, therefore, this statement simply amounts to an averment that the conductor pointed the plaintiff out to the officer who ordered him to leave the train, the alleged purpose of the conductor in pointing out being a mere conclusion of the pleader. The conductor had a perfect right to point out to the health officer the passengers on the train who had boarded it at a given city or locality. For instance, if the health officer asked the conductor to indicate to him the passengers who had held tickets from Albany, and the conductor did so, he would not thereby render the railroad company responsible for the subsequent official conduct of such officer to such passengers, or any one of them. He would be merely giving information to which the health officer, as a matter of public policy, was entitled. It was held in Owens v. Wilmington & Weldon Railroad Co., 126 N. C. 139 (78 Am. St. Rep. 642), that "A railroad company is not liable for the false arrest of a passenger on one of its trains, where the conductor in charge of the train merely pointed out such passenger to a sheriff who had come to arrest him as a party suspected of a capital offense." In that case the court said, "The defendant was wholly ignorant of the occurrence, and its conductor did not originate the cause or instigate or participate in the arrest. It would be vain and unreasonable to require him to resist an officer of the law, or the law itself. Whether the officer had authority or probable cause for making the arrest is immaterial." In the case with which we are dealing, the court properly dismissed the petition upon demurrer, and the judgment is therefore          *Affirmed. All the Justices concur.*