## Chesapeake & Ohio Railway Company v. Pack.

(Decided June 17, 1921.)

### Appeal from Johnson Circuit Court.

1. Officers—Interference When Officer Makes Arrest.—A sound, high and unimpeachable public policy requires not only a strict enforcement of the criminal and penal laws, but that those primarily entrusted with the duty of enforcing them shall not be subjected in their official conduct to unwarranted interference from others.

2. Carriers—Interference by Conductor of Train With Arrest by Officer.—A conductor of a railroad train owes no such duty to his passenger as to require him to interfere with, or attempt to prevent, his arrest by a known officer of the law, while on the train, unless, under the facts, all known to the conductor, there could be no doubt as to the unlawfulness of the arrest; it must be a plain, unmistakable case which does not require the conductor to pass upon a technical question.

3. Carriers—Opposition by Conductor of Train to Arrest by Officer. —A railroad conductor is not required in the protection of his passenger to enter into a contest with or put himself in opposition to a known officer of the law who is apparently acting within the scope of his authority.

4. Carriers—Arrest—Interference With by Conductor of Train.—A conductor is not authorized, in the protection of his passenger, although he had information that the arresting officer had no warrant, to assume from that fact that the arrest was unlawful.

WORTHINGTON, COCHRAN, BROWNING & REED, and KIRK & KIRK for appellant.

WHEELER & WHEELER for appellee.

Opinion of the Court by Turner, Commissioner—Reversing.

In December, 1916, the appellee was a resident of Burnwell, W. Va., and was there employed by a coal company. A short time before that the company by which he was employed received a letter from one Beals, at Garrett, in Floyd county, Kentucky, soliciting employment from the West Virginia Coal Company, and saying there were others at that place who wanted such employment and would come to West Virginia with him if the company would send the money for their transportation.

That company, instead of sending the money by mail, sent the appellee with it, and he arrived at Garrett about the middle of the day on the 14th of December. He saw Beals who told him that he had changed his mind about going to West Virginia, but referred him to a negro laborer named Mingues, and it is apparent from the evidence that Pack, in connection with Mingues, arranged with ten or eleven negro laborers to join him at the first station below Garrett on the early morning train the next day and proceed thence with him to West Virginia.

It is evident that the town authorities, as well as the officials of the coal company there operating, received information of Pack's purposes, and the next morning when Pack left on the train a deputy policeman and a deputy constable also boarded the train.

When the train reached the first station appellee went out either on the platform of the car or the platform of the station and there found the negro laborers and handed to one of them six dollars for the purpose of paying their fare down to the junction of the main C. & O. road. The policeman saw him hand the money to the negro and saw the eleven negroes board the train and shortly thereafter arrested them, all of whom were in the compartment provided for negro passengers, and then proceeded to another part of the train and arrested the appellee Pack.

For some reason, not clear from the evidence, the policeman proceeded from the white car with his prisoner, Pack, to the colored car, and on the way met the conductor of the train, and the conductor was then and there notified by the appellee that he was under arrest and that his arrest was unlawful because the officer had no warrant for him.

At the next station the eleven negroes and the appellee were taken from the train and told they would be taken back to Garrett, but the appellee refusing to walk, they were again taken on the train and on down the road, and were some time that day taken back to Garrett or Wayland, where the appellee was placed in jail and subsequently fined.

This is an action by the appellee against the Chesapeake & Ohio Ry. Co., which was operating the road, alleging, in substance, that while he was on the train as a passenger he was unlawfully and wrongfully assaulted and arrested and removed from the train by a person having no authority so to do, and that the wrongful arrest and removal were in the presence of the conductor operating and controlling the train, and that neither the conductor, nor any other employe of defendant gave him protection from such unlawful arrest or removal and did not protest against the same and made no effort to prevent the same. He likewise alleges that he was wrongfully and forcibly, in the presence of the conductor and other trainmen, placed in the car prepared and used for colored passengers, and compelled to ride therein with the colored passengers without protest from the conductor.

The arresting officer, Clark, was a deputy policeman or marshal of the town of Wayland, a mining town very near to and practically a part of the town of Garrett, and he arrested appellee doubtless upon the theory that he, being a policeman of a town in that county, had authority to make an arrest at any place in the county, and upon the further theory that, having seen appellee hand the money to one of the negroes for the purpose of paying their fare, the offense named in section 1349, Kentucky Statutes, of inducing persons who have contracted to labor for a fixed period to abandon such contract, had been committed in his presence.

It appears further from the record that Wayland has an ordinance making it unlawful for one to solicit laborers therein without first having secured a license.

The answer of the railway company was, in effect, only a traverse of the material allegations of the petition, and upon a trial in the circuit court the first time a verdict for $1,500 was returned against the defendant, but the court sustained the company's motion for a new trial, and thereafter another trial was had, and at that trial a verdict for $500 was returned for the plaintiff and

a judgment was entered on that verdict, and the trial court having refused the defendant a new trial, it has appealed.

In appellant's brief it is conceded that the evidence authorized the submission to the jury of the question whether appellee with the knowledge of the conductor was forced or permitted to ride in the compartment reserved for negro passengers, but it is earnestly urged that the evidence discloses no such state of case as authorized or made it the duty of the conductor to interfere, or attempt to interfere, with the arrest and detention of the appellee, or as authorized him to interpose any objection or protest against such arrest or detention.

The evidence shows that the conductor knew that Clark was a marshal or policeman of the town of Wayland, and knew that the appellee had given money to the negroes with which to pay their fare, and knew that that was done in the presence of the officer. It further shows that the conductor was informed by appellee that the officer had no warrant for his arrest, and that appellee claimed he was unlawfully in the custody of the officer.

Ordinarily it is the duty of a conductor or other train operative to protect passengers from assault, insult and abuse from fellow passengers, but how far such conductor or train operative may be justified in interfering with the action of a known officer of the law in arresting and detaining a passenger, and under what circumstances he will be justified in such interference, presents an entirely different question.

It is of the utmost importance to the public that the criminal and penal laws of the Commonwealth should be strictly enforced, and we know that primarily their enforcement depends upon the executive officers who have been chosen for that purpose; and any rule of law which would tend to lessen or weaken the authority of an officer of the law, or which would authorize or empower any citizen to interfere with or prevent a known officer from acting within the apparent scope of his authority, would necessarily tend not only to bring the law itself into disrepute, but to weaken its enforcement by paralyzing, in a measure, the authority of an officer of the law.

Not only so, but to say that the conductor of a railroad train owes such a duty to his passenger as that he, being in possession of the facts, and knowing that one

is an officer of the law, and knowing that the passenger has in the presence of the officer been guilty of certain things which the officer construes to have been the commission of an offense within his presence, had the authority, or that it was his duty to step in and prevent the officer from arresting the passenger because in his opinion under the law he had no such authority would be not only to clothe the conductor with judicial power, but would place the administration of justice at the whim or caprice of a layman, and bring its administration quickly into disrepute and lessen the respect of the public for those who are charged with law enforcement.

In this case, before the conductor would have been authorized to interfere, it would have been necessary for him to have passed upon two questions of law with all the facts before him: (1) did the officer, known by the conductor to be a policeman of the town of Wayland in Floyd county, act within his authority in making an arrest outside of the town of Wayland but in Floyd county? (2) did the officer have authority to make the arrest without a warrant when a material part of a public offense denounced by statute in this state had been committed in the presence of the officer?

It is only necessary to state this proposition to show how utterly unwise and impracticable it would be to say that it was the duty of the conductor of a railroad train to pass upon such technical questions, and to exercise the authority, after having passed upon them, to interpose in the administration of the criminal and penal laws of the state.

In the case of L. & N. R. R. Co. v. Byrley, 152 Ky. 35, one claiming to be a railroad detective arrested the plaintiff by and with the consent and acquiescence of the conductor, and the cause of action was partially based upon the failure of the conductor to protect his passenger. The court on that branch of the case said:

"Whether or not this be true depends upon the particular facts and circumstances of the case. It is essential to the maintenance of the law that its processes should be promptly executed and its officer allowed to proceed without interference, except in cases where such interference is plainly justified. When the arrest is by officers of the law, and is apparently regular, and there is nothing to put the company on notice that the arrest is illegal, the company cannot be held liable for a failure

to interfere with the officers and prevent the arrest. It would be going too far to hold that the conductor of a railroad company should interfere with officers of the law and prevent an arrest merely because he did not know whether or not they were acting within their power and authority. We think the correct rule is that a railroad company is not liable for a failure of the conductor to protect a passenger from unlawful arrest, unless the conductor knows, or the facts and circumstances known to him are such as to apprise a person of ordinary prudence, that the arrest is unlawful. Brunswick & N. Western Ry. Co. v. Ponder, 117 Ga. 63, 97 Am. St. Rep. 152, 60 L. R. A. 713; Hutchinson on Carriers, sec. 987.''

That case appears in Ann. Cas. 1915B at page 240, and at page 244 there is a note wherein there is a quotation from the case of Mayfield v. St. Louis, etc., R. Co., 97 Ark. 24, 133 S. W. 170, where it was said:

''The duty to protect the passenger from violence or assault from others does not demand that the conductor should place himself in opposition to the due administration of the law; and he cannot therefore be said to be guilty of misconduct or of negligence where he simply submits to and complies with the request or demands of those officers whose duty it is to enforce the criminal laws.''

In the case of Baldwin v. Seaboard Air Line Ry., 128 Ga. 567, 58 S. E. 35, 13 L. R. A. (N. S.) 360, the last named case was referred to, and the court further said:

''A railroad conductor is not required, for the protection of one of his passengers, to enter into a contest with, or put himself in opposition to, an officer of the law who is apparently acting within the scope of his authority. Brunswick & W. R. Co. v. Ponder, 117 Ga. 63, 60 L. R. A. 713, 97 Am. St. Rep. 152, 43 S. E. 430; Dugan v. Baltimore & Ohio R. Co., 159 Pa. 248, 39 Am. St. Rep. 672, 28 Atl. 182; Fetter, Carr. Pass., sec. 101.''

The same rule is thus stated in 4 R. C. L., page 1193:

''Where an arrest is sought to be made on a train by persons known to the crew to be officers of the law, and there is nothing to put them on notice that it is irregular, the carrier is not liable for failure of the trainmen to interfere and prevent it, or because of unnecessary violence to which the officers subject the passenger in making it, where the carrier's servants do not assist in such arrest.

The duty imposed does not obligate either the carrier or its servants to offer active resistance to the officer of the law, or to inquire into the authority under which he assumes to act.''

An examination of the authorities cited under the last text will disclose that they fully support it, and that it is never the duty of the conductor, in the protection of his passengers from arrest by a known officer of the law, to assert his authority against such officer, acting within the apparent scope of his authority, unless he knows such facts as beyond question make the action of the officer unlawful.

We, therefore, hold that it was not the duty of the conductor in the protection of the appellee as his passenger, although he had information that the officer had no warrant, to assume from that fact that the arrest was unlawful, and that he was therefore authorized, or that it was his duty, to prevent, or protest against, the arrest or detention. It is only in the clearest case, where the facts are all known to the conductor, and where there can be no doubt in the mind of an ordinarily intelligent citizen as to the unlawfulness of the arrest, that will justify a conductor in any interference with a known officer of the law in making an arrest on his train. In other words, it must be a plain, unmistakable case where the facts are fully known to the conductor, and where they do not require of him to pass upon a technical question, which will authorize him to interfere in the arrest of a passenger by a known officer of the law.

A sound, high and unimpeachable public policy requires not only a strict enforcement of the criminal and penal laws, but in addition that those primarily entrusted with the duty and authority to enforce them, shall not be subjected in their official conduct to unwarranted interference from others.

From what we have said it follows that the lower court erred in submitting this phase of the case to the jury, and for that reason the judgment is reversed, with directions to grant appellant a new trial, and for further proceedings consistent herewith.