## Louisville & Nashville R. R. Co. v. Byrley

(Decided February 4, 1913.)

### Appeal from Knox Circuit Court.

1. Railroads—Carrier and Passenger—Unlawful Arrest of Passenger—Action for Damages—Principal and Agent—Agency—Declaration of Agent—Evidence.—In an action for damages by a passenger, against a carrier for unlawful arrest, the declaration of the arresting officer that he was a railroad detective is not competent to prove the fact of agency, or of the extent of his authority.

2. Railroads—Carrier and Passenger—Unlawful Arrest of Passenger by Agent Acting Within Scope of His Authority—Liability of Carrier.—The carrier is liable for the unlawful arrest of a passenger, made by its agent while acting within the scope of his authority.

3. Railroads—Carrier and Passenger—Unlawful Arrest of Passenger—Duty of Conductor.—When an arrest is made by officers of the law, and is apparently regular, and there is nothing to put the conductor on notice that the arrest is illegal, the company cannot be held liable for a failure on his part to interfere with the officers to prevent the arrest, but where the conductor knows, or the facts and circumstances known to him are such as to apprise a person of ordinary prudence that the arrest is unlawful, the company is liable.

BLACK, GOLDEN & OWENS, HIRAM H. OWENS and B. D. WARFIELD, for appellant.

THOS. D. TINSLEY, J. M. ROBSION, J. D. MAIN, W. R. LAY and DISHMAN, TINSLEY & DISHMAN, for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER.—Reversing.

Alleging that he was wrongfully and unlawfully accused of drinking intoxicating liquor, and assaulted and arrested, while a passenger on defendant's passenger train, plaintiff, John Byrley, brought this action against the defendant, Louisville & Nashville Railroad Company, to recover damages. The jury returned a verdict in his favor for $500. The railroad company appeals.

The facts, briefly stated, are as follows:

During the month of April, 1911, plaintiff obtained a ticket from Middlesboro, Kentucky, to Barbourville, Kentucky, and took passage on one of defendant's passenger trains at Middlesboro. When the train reached Pineville, Messrs. John C. White and Carlo Lyttle entered the train. Plaintiff turned over one of the seats, and the three sat down together. In a short time a stranger, who seems to have known plaintiff, sat down by plaintiff. Plaintiff saw a bottle of whiskey in the stranger's pocket, and pulled it out and shook it. He then returned the bottle to the stranger, who asked each one of those present to take a drink. Plaintiff declined, and so did Messrs. White & Lyttle. Finally Mr. Lyttle consented to and did take a drink. The stranger then pressed the bottle to his lips, but whether he drank any or not does not appear. Just then a man occupying a seat four or five seats behind the party came running forward with his hand on his right pocket. What then took place is detailed by plaintiff in the following language:

"Yes sir, and he says, 'you all consider yourselves under arrest;' and I said, 'what have we done;' and so did Mr. Lyttle; and he says, 'you have all been drinking on this train,' and Mr. Lyttle said, 'gentlemen is that a violation of the law,' and he says, 'yes, sir,' in a vigorous mean way. I could not speak it like he did. Mr. Lyttle says, 'I am a lawyer, and read law, and have been practicing law a long time and I have never seen that in the statute.' He says, 'if I get the conductor will you surrender?' I says 'yes sir, we are law-abiding men, if you will get the conductor and he says it's a violation.' He started for the conductor and when he got to the door the conductor was coming in, and he remarked to the conductor, 'I have these men all arrested for drinking;' and the conductor says, 'that it is all he can do, gentlemen, he has a perfect

right to arrest you' And I says, 'all right, we submit;' we went to trying to fill a bond. I offered him any kind of a bailable bond, and he says no, he was going to take us to Corbin and put us in the lockup, and if we failed to pay or replevy he would work us on the streets, and that meant that he would not give us a trial before 9 or 10 o'clock the next day. I says, 'partner if this crime is committed take us to Barbourville. If we have to go to jail we had rather go to Barbourville where we are known, and we had rather stand a trial there than anywhere else, and it don't seem right for you to take us away from Knox County to Whitley County;' and he said he was going to take us right on; some of them agreed to put up the money and ask me how much it would be and he said $10. Mr. Lyttle got out a check book to pay for us, and I had money for myself and Mr. White, and he would not take a check and he remarked 'it's $15.00.' I said 'Mr. Lyttle, you give him your check;' he refused to take Mr. Lyttle's check; and when he did that I says, 'I will put up the money for us three and this gentleman can take care of himself. I didn't know anything about the stranger; and he raised it up to $15.00, and Mr. Lyttle says, 'I am an old man and by hell you are treating us wrong;' and he says, 'it is $5 for costs.' I gave him a $20.00 bill, the tussel started at Flat Lick and by that time we were at Artemus, he went on and got the change and came back, and he loped me for mine and I says, 'I have not drank a drop and have not touched it, and I can prove by ever man on this train I haven't drank any, have not drunk a drop, and I don't know why you are pulling us, and Mr. White has not drank either.' He says 'I will release you' and the train blowed for Barbourville, about that time. He turned me loose just as the train stopped here at Barbourville."

Plaintiff further says that when they asked the officer's authority the officer said he was a railroad detective, and if he didn't do this he would lose his job. This evidence was objected to, but the objection was overruled. Plaintiff also says that the officer talked to the crowd in a boisterous and rough manner, and abused the members of the party. They did not surrender until he got the conductor. When the conductor came they surrendered at once. There were several people in the car at the time, and plaintiff was much humiliated by what took

place. The arrest took place at Flat Lick, in Knox County. With the exception of Mr. Lyttle, none of the three in plaintiff's party had taken a drink, and the arresting officer was repeatedly assured of this fact. The conductor was very polite, and treated the party in a kind and courteous manner. The evidence of Messrs. White and Lyttle is substantially the same as that given by plaintiff.

Chapter 18, Acts of 1910, provides as follows:

"1. That any person who shall, in or upon any railroad locomotive, passenger coach, interurban car, street car, or in or upon any vehicle commonly used for the transportation of passengers, or in or upon any common carrier, or in or about any railroad depot, station, ticket office, waiting room, or platform, drink any intoxicating liquor of any kind; or if any person shall be drunk or disorderly in or upon any railroad passenger coach, interurban car, street railway, or in or upon any vehicle commonly used for the transportation of passengers, or in or upon any common carrier, or in or about any railroad depot, station, ticket office, waiting room, or platform, such person or persons shall be deemed to be guilty of a misdemeanor, and upon conviction thereof, shall be fined not less than ten ($10.00) dollars nor more than fifty ($50.00) dollars, or imprisoned not less than ten nor more than thirty days, or both so fined and imprisoned in the discretion of the Court or jury: Provided, that the foregoing section shall not apply to any person drinking intoxicating liquors purchased by him in or upon any buffet or dining car operated by a common carrier in this Commonwealth.

"2. Any person violating the provisions of Section 1 of this act shall be tried in any Court of competent jurisdiction in the county where the offense shall have been committed.

"3. It shall be the duty of every railroad conductor of a steam, interurban or street railway, and station, depot, or ticket agent of said railway when he sees any person violating the provisions or any of them of Section 1 of this Act, to at once notify the nearest or most convenient sheriff, constable, town marshal or policeman, of the county in which the offense is committed, giving him such description by name or otherwise as will enable the officer to identify the offender, as also giving him the offense, and it shall thereupon be the duty of the

officer so notified to arrest without delay any such person without any other evidence of his guilt and to take him before the nearest magistrate to be proceeded against in the manner provided by law. If any such officer shall willfully or negligently refuse to make the arrest he shall be fined not less than $10.00 nor more than $50.00 for each offense and it shall be the duty of the conductor or agent giving to the officer the information upon which to make the arrest to prosecute the delinquent officer.''

It will be observed that the foregoing act makes it an offense for any person to drink any intoxicating liquor of any kind upon a passenger coach. In case any one is guilty of the offense it is made the duty of the conductor to at once notify the nearest and most convenient sheriff, constable, town marshal or policeman of the county in which the offense is committed, and it then becomes the duty of the officer so notified to make the arrest.

The arrest was made by one John McCoy. No proof of his authority to make the arrest was shown. On the contrary, it was shown by the county clerk of Knox County that McCoy was not a peace officer of that county, and the defendant admitted that McCoy had no authority to make the arrest.

Not only this, but the evidence shows that plaintiff was not guilty of the offense of drinking intoxicating liquors. It therefore follows that his arrest was unlawful.

The plaintiff predicates his case on the theory that the arrest was made by McCoy and the conductor, who were agents and employees of the defendant. Defendant insists that there was no competent proof of the fact that McCoy was its agent, and that it cannot be held liable because of the conduct of the conductor in giving an erroneous interpretation of the law. It is well settled that the admission or declaration of an agent cannot be given in evidence against the principal, either to establish the fact of agency or to establish the extent of authority. Huffcut on Agency, Section 137; B. & O. S. W. R. R. Co. v. Clift, 142 Ky. 575, 134 S. W. 117; Peyton v. Woolen Mills Co., 122 Ky. 361. This being true, it was not competent to prove McCoy's agency by his own declaration. Excluding his declaration, the only other circumstance tending to show his agency is the fact that the conductor said that he had a perfect right to make the arrest. As this statement may have applied with equal

force to any peace officer, whether an employee of the company or not, it follows that it is not sufficient to show that McCoy was an agent or employee of the company. There being no evidence, then, that McCoy was an agent or employee of the defendant, or that in making the arrest he acted within the scope of his employment it was improper to authorize a finding of the jury in favor of plaintiff, based on the fact of such agency.

Plaintiff contends, however, that the case was properly submitted to the jury because the conductor acquiesced in the arrest made by McCoy, and therefore failed to exercise the highest degree of care to protect plaintiff as a passenger. Whether or not this be true depends upon the particular facts and circumstances of the case. It is essential to the maintenance of the law that its processes should be promptly executed and its officers allowed to proceed without interference, except in cases where such interference is plainly justified. When the arrest is by officers of the law, and is apparently regular, and there is nothing to put the company on notice that the arrest is illegal, the company cannot be held liable for a failure to interfere with the officers and prevent the arrest. It would be going too far to hold that the conductor of a railroad company should interfere with officers of the law and prevent an arrest merely because he did not know whether or not they were acting within their power and authority. We think the correct rule is that a railroad company is not liable for a failure of the conductor to protect a passenger from unlawful arrest, unless the conductor knows, or the facts and circumstances known to him are such as to apprise a person of ordinary prudence, that the arrest is unlawful. Brunswick & Western Ry. Co. v. Ponder, 117 Ga. 63, 97 Am. St. Rep. 152, 60 L. R. A. 713; Hutchinson on Carriers, Section 987.

On the return of the case the plaintiff may amend his petition and assert a claim for damages for a failure on the part of the conductor to protect him from the unlawful arrest, by making the allegations of his amended petition conform to the views herein expressed.

The instructions given by the trial court are not only erroneous in submitting the question of the company's liability for the acts of its agent, McCoy, without proof of agency, but in submitting the further question of the liability of the company for the acts of the conductor,

without qualifying the instruction as above indicated. The instructions are also erroneous in submitting to the jury the question whether or not plaintiff was beaten and bruised, in the absence of evidence showing that he had been beaten and bruised.

If on another trial the evidence be substantially the same, and there be additional evidence sufficient to submit to the jury the question of McCoy's agency, and of his acting within the scope of his employment, and if there be further evidence tending to show that the conductor knew, or the facts and circumstances known to him were sufficient to apprise a person of ordinary prudence that the arrest of plaintiff was unlawful, the court will instruct the jury in substance as follows:

1. McCoy had no right to arrest plaintiff, and if you believe from the evidence that on the occasion in question he was the agent and employee of the defendant, and while acting within the scope of his authority he arrested plaintiff, you will find for plaintiff; or

2. If you believe from the evidence that the conductor knew, or the facts and circumstances known to him were sufficient to apprise a person of ordinary prudence, that the arrest of plaintiff, if there was an arrest, was unlawful, and that the conductor failed to exercise the highest degree of care to protect plaintiff from such arrest, if any, you will find for plaintiff.

3. Unless you believe from the evidence as set out in instruction No. 1 or instruction No. 2, you will find for the defendant.

4. If you find for plaintiff under either instruction No. 1 or instruction No. 2, you will award him such sum in damages as you may believe from the evidence will properly compensate him for any mortification or humiliation of feeling he may have endured as the direct and proximate result of such arrest, if any; and if you find for plaintiff under instruction No. 1, and not under instruction No. 2, and further believe from the evidence that McCoy was abusive or insulting to plaintiff, then you may or may not, in your discretion, in addition to compensatory damages, allow plaintiff such further sum by way of punitive damages as you may believe from the evidence is right and proper, your finding in all, however, not to exceed the sum of $5,000, the amount claimed in the petition.

Judgment reversed and cause remanded for new trial consistent with this opinion.