[Nashville, C. & St. L. Railway v. Crosby.]

# Nashville, C. & St. L. Railway *v.* Crosby.

## *Injury to Passenger.*

(Decided June 5, 1913.    Rehearing denied June 30, 1913.
62 South. 889.)

1. *Carriers; Passengers; Duty to Protect.*—While it is the duty of a common carrier to protect its passengers against violence, whether from its servants or strangers, the liability of the carrier to protect from the misconduct of others arises only when the wrong is actually foreseen in time to prevent the misconduct, or is of such a nature and perpetrated under such circumstances that it might reasonably have been anticipated.

2. *Same.*—The duty to protect passengers is not confined to the carrier's vehicle, but extends throughout the continuance of the relation.

3. *Same.*—The degree of care required of a carrier to protect its passenger varies with time and place; a high degree of care being required while the passenger is on the vehicle, and only ordinary care while the passenger is waiting at the carrier's station.

4. *Same.*—Where a known officer of the law in the apparent exercise of his official authority disturbs the peace and personal security of a passenger, it is not the duty of the servants of the carrier to interfere unless the conduct of the officer is known to be illegal.

5. *Same.*—A carrier's servants are not bound to inquire whether an officer is acting officially and with lawful authority where such person is known to be an officer of the law invested with general authority, and acting under such apparent authority, arrests and searches the person of the passenger.

6. *Same.*—Where a passenger is disturbed by a servant of the carrier while engaged in some service the carrier's liability is grounded upon the breach of an absolute duty rather than on that of negligence.

7. *Same; Action; Pleading.*—In an action against a carrier for damages caused by reason of an illegal search of a passenger upon its premises, the complaint must state facts sufficient to show that the servants of the carrier should have intervened to protect the passenger, that is to say, a knowledge of the intended wrong, or reasonable grounds to anticipate it in time to interfere with its execution.

8. *Same; Jury Question.*—Where a plaintiff illegally searched on defendant's railway premises after she had begun her journey. went with an officer of the law first to the waiting room, and then to the freight room where she was searched, her failure to object or protest was not, as a matter of law, a consent to the search; that being a question for the jury under the evidence.

9. *Same; Evidence.*—The evidence examined and held insufficient to show that the servant of defendant knew that plaintiff was about

[Nashville, C. & St. L. Railway v. Crosby.]

to be assaulted or searched by the woman who claimed to have lost a watch, and who caused the search.

10. *Same; Variance.*—The fact that the servant of defendant said to the officer, "Search her in the freight room," does not constitute a variance as the language could not be construed as an instruction to make the search, but merely a direction as to the place and in response to the statement of the officer that plaintiff was accused of stealing a watch, and also as tending to show a knowledge of the search.

11. *Same; Illegal Search; Defense.*—Where the servants of the carrier participated in the illegal search of a passenger, the carrier is liable for assault and battery although the servant believed the search to be legal.

12. *Same.*—Where a peace officer did not request the servant of defendant railroad company to assist in searching plaintiff, the acts of the servant in participating in the illegal arrest and search cannot be excused on the idea that an officer may require assistance even in making an illegal arrest.

13. *Same.*—Where the action is by a passenger for damages for a failure of the servant of the carrier to protect her from an illegal arrest and search, the burden is on the passenger to show knowledge, on the part of the servant that the search which was made by the officer was illegal.

14. *Same; Evidence; Sufficiency.*—The evidence examined and held insufficient to show that the servant of defendant knew of the illegality of the action of the officer.

15. *Pleading; Anticipating Defenses.*—It is not necessary for a complaint to anticipate defenses; therefore, in an action against a carrier because of an illegal search of a passenger upon its premises, the complaint need not aver that the search was made by an officer of the law.

16. *Appeal and Error; Harmless Error; Instruction.*—The improper overruling of a demurrer to those counts of the complaint which fail to show that the carrier had knowledge of the proposed search in time to protect the passenger was harmless where other counts sufficiently alleged such knowledge and the instructions given made such knowledge a condition precedent to such recovery.

17. *Witnesses; Impeachment.*—Whether a witness voluntarily testified for a defendant is a proper inquiry on cross-examination.

18. *Trial; Argument of Counsel; Objection; Sufficiency.*—Where only a part of the statement made by counsel for plaintiff in argument was improper as being without support in the evidence, an objection to the whole statement was properly overruled as the attention of the court should have been directed to the part not supported in the evidence, and such objection should be promptly interposed.

19. *Charge of Court; Argumentative.*—Argumentative charges are properly refused.

20. *Same; Abstract.*—Charges predicated on matters concerning which there is no evidence should be refused as being abstract.

(Sayre, J., dissents in part.)

APPEAL from Gadsden City Court.

Heard before Hon. JOHN H. DISQUE.

Action by Mrs. Dora Crosby against the Nashville, Chattanooga & St. Louis Railway for damages for injuries to her while a passenger. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

The complaint contains five counts, each of which shows that plaintiff, a woman, had become a passenger by the purchase of a ticket for transportation over defendant's line, and that while in defendant's station at Albertville, awaiting the arrival of the train she was assaulted and beaten and her person searched for a watch alleged to have been stolen.

The first count alleges that defendant negligently allowed and permitted one R. L. Amos to assault and beat the plaintiff and to lay violent hands on the plaintiff and to search her against her will for a watch alleged by said Amos to have been stolen, and also that defendant's agent at Albertville, Ala., to wit, Robert Whitman, knew of the assault and mistreatment of plaintiff by said Amos and failed and refused to protect the plaintiff against said assault and mistreatment, although plaintiff called upon said Whitman and appealed to him to protect her against the same.

The second count is substantially the same as the first, but omits any allegation of notice to or knowledge by the defendant or its agents of the alleged mistreatment and of plaintiff's appeal to Whitman for protection.

The third count charges that one Whitman, who was then and there the station or depot agent of defendant, and one R. L. Amos did assault and beat the plaintiff and search plaintiff for a watch which was alleged to have been stolen; and further that said assault, battery, and search of plaintiff was permitted by defendant and

was committed by its said agent and the said R. L. Amos in breach of its duty to plaintiff.

The fourth count charges that defendant negligently allowed or permitted one Mrs. M. V. Sims to assault and beat the plaintiff and to search her against her will for a watch alleged by the said Mrs. Sims to have been stolen, and further charges that the agent Whitman knew of and failed to protect her at her request, in the language used in count 1.

The fifth count is the same as the fourth, but omitting any allegation of notice to or knowledge by defendant or its agent of the alleged mistreatment and of plaintiff's appeal to Whitman for protection.

Defendant filed a demurrer to each of the counts of the complaint and to each count thereof separately and severally, setting up a number of grounds, including the following:

"(9) Said complaint fails to show that the said depot agent knew or by the exercise of reasonable diligence should have known, that the said assault and battery was unlawful.

"(10) Said complaint does not show that any servant or agent of defendant knew, or by the exercise of reasonable diligence should have known, that the said search was unlawful in time to have prevented said search.

"(11) Said complaint does not show that any servant or agent of defendant could have prevented the said assault and battery or the said search."

These demurrers being overruled, the defendant filed the general issue and six special pleas, the substance of which is shown by the following:

"(4) That the matter complained of in the complaint consisted in a search of plaintiff's person by R. L. Amos, who was then acting as the marshal of the town of

Albertville, for a watch claimed to have been stolen, and search was not caused or participated in by defendant or any agent or employee of defendant.

"(5) That the matter complained of in the complaint consisted of plaintiff being taken into custody and searched by one R. L. Amos, who was then acting as an officer of the law, and without the suggestion, assistance, or connivance of defendant or any agent or employee of defendant."

"(8) That the only basis in fact for this suit is that plaintiff was searched by one Mrs. M. B. Sims and one R. L. Amos for a watch, and this search was made at the instance and request of the plaintiff, and not otherwise."

Plaintiff's demurrers to the special pleas were overruled, and issue was joined on said pleas and the jury found by their verdict for plaintiff in the sum of $7,000. The evidence shows without dispute that R. L. Amos, the town marshal of Albertville, while standing near the station was informed by Mrs. Sims of the loss of a watch from a room in which plaintiff had been staying, and that suspicion pointed to her as the guilty party. Mrs. Sims was accompanied by her brother-in-law, Dr. Irvin, and all three of them proceeded to the station, and Amos entered the waiting room where plaintiff was. According to the testimony of Amos, he then said nothing to the agent Whitman, but at once approached plaintiff and told her he wanted to see her privately, whereupon she willingly walked around to the freight room with him; Mrs. Sims and Dr. Irvin accompanying them. Finding other persons in the freight room, they went back around to the colored waiting room, entered, put other persons out, closed the door, and then discussed the stolen watch. Prior to going to the freight room Amos had requested

of Whitman the privilege of using that room for a private conversation with plaintiff, to which Whitman consented; and before going to the colored waiting room for the same purpose Amos again asked Whitman for the use of the waiting room, receiving his assent. In the waiting room plaintiff was search first by Mrs. Sims and then by Amos; Dr. Irvin being present. The testimony of all three is that plaintiff expressed a perfect willingness to be searched, while plaintiff testified that she did not consent and was objecting all the time. Mrs. Sims, Dr. Irvin, Whitman and two other witnesses corroborate Amos in the statement that Whitman had nothing to do with directing the search and in no way participated in it. Plaintiff testified that when Amos first entered the waiting room he whispered with Whitman, who said, "Bob, take her in the freight room and search her," and that while there she told Whitman she had bought her ticket and called on him to protect her, at the same time denying that she had taken the watch. She is corroborated by two witnesses and is contradicted by Whitman, Amos, Irvin, and Mrs. Sims. Amos states that he was not acting in this matter as an officer of the law, but there is nothing tending to show that Whitman was aware of this fact. Amos did not arrest plaintiff, and Whitman had no reason to believe that an arrest had been made. It is shown without dispute that plaintiff was innocent of any offense in relation to the watch, and that the search was wholly illegal, if not consented to by plaintiff. The following charges were refused the defendant:

"The court charges the jury that if they find from the evidence that plaintiff, after hearing defendant's station agent say to Amos, a policeman, to take her in the freight room and from there to the colored waiting room, or words to that effect, went without objection

or protest with said Amos to the freight room, then from there to the colored waiting room, then the verdict should be for the defendant.

"(8) The court charges the jury that if the matter complained of in the complaint consisted of plaintiff's arrest, and her search by one R. L. Amos, who was then and there an officer of the law, to wit, the marshal of Albertville, plaintiff cannot recover in this case, and the verdict of the jury must be for the defendant."

GOODHUE & BRINDLEY, and DORTCH, MARTIN & ALLEN, and SPRAGINS & SPEAKE, for appellant. Negligence will not be presumed, but its existence must be shown when it is charged.—Jones on Evid. 1. Therefore, the court should have given the general charge as to counts 4 and 5.—*B. R. L. & P. v. Randall,* 149 Ala. 543; *L. & N. v. Markee,* 103 Ala. 169. Because of a variance the court erred in not giving the general charge as count 3.—130 Ala. 346; 60 L. R. A. 715. The verdict was contrary to the evidence and the charge of the court, and the court was in error in declining to set it aside.—73 Ala. 248; 116 Ala. 149; 158 Ala. 112; 56 South. 134. It was not the servant's duty to interpose any opposition to plaintiff being searched by Amos, who was then and there a known officer of the law, nor was there any duty on the carrier to inquire into his authority.—3 A. & E. Ann. cases, 255; 117 Ga. 63; 159 Pa. St. 148; 82 S. W. 524. On these authorities last cited the court erred in that part of his oral charge which was excepted to. It was error to permit it to be shown that Dr. Heard came to court without a subpoena.—137 Ala. 504. The court erred in overruling defendant's objection and motion to exclude arguments of plaintiff's counsel in closing.— 159 Ala. 51; 74 Ala. 389; 68 Ala. 485; 116 Ala. 150. In the light of all the above authorities it is insisted that

the court erred in refusing the charges requested by defendant. It is the duty of bystanders to assist an officer when called upon to do so, and does not render the act of the bystander an assault and battery, although the officer is acting without authority.—3 Cyc. 1050; *Watson v. State,* 82 Ala. 60; 24 Vt. 69; 80 N. C. 273; 24 N. C. 50.

KNOX, ACKER, DIXON & STERNE, and O. R. HOOD, for appellee. Counts 1 and 4 were not susceptible of the construction sought to be placed upon them by appellant. Certainly, there was an arrest.—3 Cyc. 873. The affirmative charge should not have been given as to any counts of the complaint, as it does not appear that appellee assented or that defendant would have been relieved of liability had she done so. The verdict was not excessive.—42 Fed. 482; 44 Am. Rep. 152; 112 La. 817; 80 Me. 177; *Pullman Co. v. Lutz,* 154 Ala. 517. There was no variance between the proof and the allegation as to counts 4 and 5.—*Mobile R. R. Co. v. Glover,* 150 Ala. 386; *K. C. M. & B. v. Childress,* 132 Ala. 611; *White v. Haas,* 32 Ala. 430. No consent to the search is shown.—*McQuirk v. State,* 84 Ala. 437; 19 Cyc. 334. There was no error in the oral charge of the court.— *Alexander v. Smith,* 61 South. 68; *A. G. S. v. Sanders,* 145 Ala. 449. There was no error in permitting it to be shown that the witness came voluntarily and without a subpoena.—*Prince v. State,* 100 Ala. 144; *L. & N. v. Tegnor,* 125 Ala. 601; *Moore v. N. C. & St. L.,* 137 Ala. 495. The objection to the argument of counsel was to the whole and not to a part unsupported by the evidence, and hence, was properly overruled.—*L. & N. v. Hurt,* 101 Ala. 36; *B. R. L. & P. Co. v. Gonzales,* 61 South. 84. There was no error in the rulings on demurrer to the complaint.—*B. R. L. & P. Co. v. Gonzales,*

[Nashville, C. & St. L. Railway v. Crosby.]

*supra*; Ia. 127; 176 Pa. 628. A complaint need never negative a defense.—*Ga. Pac. v. Davis,* 92 Ala. 307, and authorities supra.

SOMERVILLE, J.—It is the duty of common carriers to protect their passengers against violence or improper conduct, whether on the part of its own servants or of other passengers or strangers; but the carrier's liability for failure to protect from the misconduct of others than its own servants arises only when the wrong is actually foreseen or is of such a character and perpetrated under such circumstances as that it might reasonably have been anticipated or naturally expected to occur.—*Batton v. S. & N. Ala. R. R. Co.,* 77 Ala. 591, 54 Am. Rep. 80; *Britton v. A. & C. Ry. Co.,* 88 N. C. 536, 43 Am. Rep. 749; 6 Cyc. 604. It is of course a corollary to this rule of liability that the injurious misconduct complained of could have been foreseen in time to permit of its effective prevention.—*Id.; Montgomery Traction Co. v. Whatley,* 152 Ala. 101, 44 South. 538, 126 Am. St. Rep. 17.

This duty is not confined to the case of a passenger on a train or car but extends to the relation so long as it continues, at all times and places.—*Id.;* 6 Cyc. 600 (3).

Nevertheless, the measure of care varies according to time and place; and, while a very high degree of care may be required of the carrier with respect to passengers while actually on its trains or cars, only ordinary care is required as to passengers waiting at its stations, at least under ordinary conditions as they exist in this country.—*Batton v. S. & N. Ala. R. R. Co., supra.*

In the recent case of *So. Ry. Co. v. Hanby, infra,* 62 South. 871, this subject was carefully considered by this court, and it was there said that "the duty of protection does not arise until such carrier    *    *    *    has

reasonable grounds for believing that such violence or insult will occur unless steps are taken to prevent it."

It is also the rule that, when a known officer of the law, in the apparent exercise of official authority, and not exceeding the limits of his customary functions, disturbs the peace and personal security of a passenger, it is not the duty of the carrier or its servants to intervene for the protection of the passenger.—*Bowden v. A. C. L. R. R. Co.*, 144 N. C. 28, 56 S. E. 558, 12 Ann. Cas. 783, and note; *Owens v. Dilmington, etc., R. R. Co.*, 126 N. C. 139, 35 S. E. 259, 78 Am. St. Rep. 642; *Brunswick, etc., R. R. Co. v. Ponder*, 117 Ga. 63, 43 S. E. 430, 60 L. R. A. 713, 97 Am. St. Rep. 152; *Tex. Mid. R. R. Co. v. Dean*, 98 Tex. 517, 85 S. W. 1135, 70 L. R. A. 943; *Duggan v. B. & O. R. R. Co.*, 159 Pa. 248, 28 Atl. 182, 186, 39 Am. St. Rep. 672, 676. If the carrier's servant knows that the arrest or search is illegal, it would doubtless be his duty to make inquiry into the matter and to make seasonable and suitable protest for the protection of the passenger. But it would be contrary to good order and sound policy to require the carrier's servant to forcibly contest with an officer the rightfulness and propriety of his action in making an arrest, or a search, unless, perhaps, it is accompanied by palpably abusive and improper treatment not germane to his official acts.

But where the arrest or search is made by a known officer who is invested with the general authority to do such acts, the carrier's servant is under no duty to inquire whether he is in fact acting officially or with lawful authority in the particular case. He may assume these things and is under no duty to interfere with the officer.—*Tex Mid. R. R. Co. v. Dean, supra; Duggan v. B. & O. R. R. Co., supra; Brunswick, etc., R. R. Co. v Ponder, supra.*

[Nashville, C. & St. L. Railway v. Crosby.]

When the injurious disturbance of the passenger is by the act of the carriers own servant while he is engaged in its service, and to whom is committed *some part* of its duty with respect to the custody and safe carriage of its passengers, the carrier's liability is not grounded on the theory of negligence nor upon the assumption that the act is within the scope of the servant's authority or within the line of his employment, but rather upon the theory of the breach of an absolute duty resting on the carrier to see that its passengers are not injured by the servants to whose care or custody they have been committed or exposed.—*B. R. & E. Co. v. Baird*, 130 Ala. 334, 30 South. 456, 54 L. R. A. 752, 89 Am. St. Rep. 43; *Tex. Mid. R. R. Co. v. Dean*, 98 Tex. 517, 85 S. W. 1135, 70 L. R. A. 943; *Dwinelle v. New York, etc., R. R. Co.*, 120 N. Y. 117, 24 N. E. 319, 8 L. R. A. 224, 17 Am. St. Rep. 611; *Gillingham v. O. R. R. R. Co.*, 35 W. Va. 588, 14 S. E. 243, 14 L. R. A. 798, 29 Am. St. Rep. 827; 4 Elliott on Railroads (2d Ed.) § 1638.

With this statement of the general principles applicable to the facts of this case, we proceed to a consideration of the particular question presented by the record.

It is not necessary for the complaint to anticipate defenses and allege that the assault or search was illegal or not made by an officer of the law, and the several grounds of demurrer predicated on that theory are without merit.

It is, however, necessary for each count of the complaint, charging that defendant negligently allowed or permitted a stranger to assault and beat or search plaintiff, to allege a state of facts upon which the duty of protection or intervention would arise, viz., a knowledge by defendant of the intended wrong, or reasonable grounds to anticipate it, in time to prevent or inter-

fere with its execution. In this respect the second and fifth counts of the complaint are fatally defective, and the several grounds of demurrers pointing out the defect were well taken and should have been sustained.— *So. Ry. Co. v. Hanby, infra,* 62 South. 871; *Ensley Ry. Co. v. Chewning,* 93 Ala. 24, 26, 9 South. 458.

Nevertheless, the error was without prejudice to appellant, since other counts sufficiently alleged knowledge by or notice to Whitman, defendant's responsible agent; the issue was contested by full evidence on both sides; and the trial court fully and clearly instructed the jury, both ex mero motu and in writing at defendant's request, that defendant's agent, Whitman, "was under no duty to interfere for the protection of the plaintiff unless he knew or had reasonable cause to believe that she was threatened or about to be subjected to an unlawful assault upon or search of the person"; and further "that, if the evidence in the case does not reasonably satisfy them [the jury] that defendant's station agent, Whitman, directed or suggested the search of the plaintiff, and that plaintiff did not ask or call on him to protect her from being searched, then the verdict should be in favor of the defendant;" and more directly still that, "if they believe from the evidence that defendant's station agent, Whitman, did not suggest, direct, or in any manner participate in a search of plaintiff's person, then their verdict should be in favor of defendant." These instructions, in substantially similar form, were repeated over and over, and in fact the only issue they submitted to the jury was the single question of Whitman's affirmative participation in the alleged search.

There was no error in allowing plaintiff to show, on the cross-examination of one of defendant's witnesses, that he came to court to testify for defendant volunta-

rily; i. e., without the compulsion of a subpœna. Although that fact might ordinarily be of small significance, yet it may sometimes indicate abnormal zeal or interest on the part of the witness, and it is the practice to allow it to go to the jury for what it may be worth.—*Wabash R. R. Co. v. Ferris,* 6 Ind. App. 30, 32 N. E. 112; 40 Cyc. 2684, and cases cited.

In his closing argument to the jury one of plaintiff's counsel stated that "Mrs. Wakefield was a sister-in-law of Whitman, the agent, and that (the missing watch was found in Mrs. Wakefield's house)." The bill of exceptions recites that "defendant objected to the foregoing statement of plaintiff's counsel and moved to exclude it from the jury, and the court overruled defendant's objection and motion to exclude and allowed said statement to remain with the jury," to which defendant duly excepted. That part of the statement in parenthesis was not a fact in evidence, but the other part of it was. The objection to the *whole* statement was properly overruled.—*L. & N. R. R. Co. v. Holland,* 173 Ala. 675, 55 South. 1001; *L. & N. R. R. Co. v. Hurt,* 101 Ala. 35, 13 South. 130.

It should affirmatively appear that the objection was interposed promptly upon the making of the objectionable statement, and the court's attention should have been called to the absence of evidence to support it.— *B. R. L. & P. Co. v. Gonzales, infra,* 61 South. 84.

Charge 7 refused to defendant is argumentative and does not state a correct proposition of law. Although plaintiff may have gone with Amos to the freight room and afterwards to the colored waiting room, "without objection or protest," this was not, as matter of law, a consent by her to the search of her person by Amos or Mrs. Sims. If the agent Whitman instructed Amos, whom he knew to be an officer, to take her to those

places and search her, her submission might well have been produced by the duress of her situation and the apparent power and authority of Amos and Whitman. It was clearly for the jury to say on all the evidence whether plaintiff in fact consented to the search or not.

Charge 8 refused to defendant is predicated on the fact of an arrest of plaintiff as a preliminary to the search of her person. It will suffice to say that the undisputed evidence affirmatively shows that plaintiff was not arrested at all, and, the charge being abstract in this essential particular, it was properly refused.

The trial court refused to give for defendant the general affirmative charge on the whole complaint and on each separate count, as separately requested in writing by defendant.

The argument in favor of the conclusion of error in these refusals is: (1) That as to counts 4 and 5 there is no evidence tending to show that the agent Whitman knew, or had reason to believe, that plaintiff was being or was about to be assaulted or searched by Mrs. Sims; (2) that as to these same counts there is a fatal variance between pleading and proof, the one being for *negligently allowing* the wrong, and the other showing *actual participation,* if anything at all; (3) that as to the whole complaint the evidence shows that plaintiff consented to the search; (4) that whether she consented to the search or not, she was under arrest in the hands of a known officer of the law at the time she was searched, and hence beyond the reach of defendant's ordinary obligation to protect her; and (5) that in the absence of knowledge that the arrest was illegal, Whitman might have lawfully assisted the officer in making it, though it was in fact illegal. We will notice these contentions seriatim.

[Nashville, C. & St. L. Railway v. Crosby.]

1. It is certain that there is nothing in the evidence to show a knowledge by Whitman of an intended search of plaintiff *specifically* by Mrs. Sims. Nor is there anything in the evidence to show that Whitman knew of the search by Mrs. Sims while it was being conducted, or to show that plaintiff appealed to Whitman to protect her against it. Plaintiff's counsel insist that Whitman's knowledge may be fairly inferred from the fact that Mrs. Sims was with Amos and plaintiff when they went to the freight room, and also when they came back and Amos requested of Whitman the use of the waiting room, and also from the fact that the ticket window between Whitman's office and the waiting room was open; that Whitman passed by the window several times and saw Amos' party once through the apperture; and that he *could have seen* all that was going on. But the mere presence of Mrs. Sims with the party might as well have suggested to Whitman that she was the companion and friend of plaintiff and seeking to befriend and protect her as that she was abetting the purpose of Amos to search her. And so the fact that Whitman might have seen the search of plaintiff by Mrs. Sims through the ticket window, had he approached it and looked through just at the time of the search, has no tendency to show that he in fact did so. Plaintiff herself does not affirm that she saw him do so; Dr. Irvin says he did not see him at the window during the search, though it was in the range of his vision; and Whitman says he did not see the search and knew nothing about it. His knowledge that Amos was going to search plaintiff, and that Mrs. Sims was going to be present, was not sufficient to warn him that Mrs. Sims would also make a search.

It is clear to our minds, under the evidence adduced, that plaintiff had no right of recovery at all unless the jury believed the testimony of her and her witnesses

that Whitman ordered Amos to search her. And of course, if Mrs. Sims made a search under the direction and authority of Amos, that might well be regarded as the proximate result of Whitman's original wrong and as being in fact a search by Amos himself and through Amos by Whitman. But plaintiff has elected by her pleadings to treat Mrs. Sims' search as an independent wrong, anticipated or known *as such* to defendant through its agent Whitman. The evidence did not sustain this phase of her complaint, and the trial court should have instructed the jury that they could not find for plaintiff on the fourth count.

2. There is no merit in the theory of a variance in the aspect suggested, since the jury might have interpreted Whitman's alleged language to Amos as a mere designation of the place in which he might make the search and not as an *instruction* to make a search. Thus interpreted, it simply imported Whitman's knowledge of the impending search, and hence showed his opportunity and his duty to prevent it if practicable, assuming that he knew its illegal character. There is nothing, it is true, to indicate such knowledge on his part, and the interpretation suggested would, under the principles of law above enunciated, lead to the conclusion that plaintiff was not entitled to recover on any count of the complaint. Hence, although there was not necessarily a *variance* as to any of the counts, there was either a variance or a failure of necessary proof as to all counts but the third.

3. In discussing the refusal to give defendant's requested charge 7, we have already disposed of the theory that plaintiff's consent to the search was shown as matter of law. That was a jury question, pointedly so in view of plaintiff's positive testimony that she was objecting to it all the time.

[Nashville, C. & St. L. Railway v. Crosby.]

4. As already pointed out, the evidence affirmatively shows, without any dispute, that plaintiff was not arrested by Amos, and that Whitman did not even suppose that she had been arrested. Hence all of defendant's arguments based upon that theory are entirely without merit.

5. The search of plaintiff was confessedly illegal if made without her consent. If Whitman actually participated in it, he was guilty of a battery upon her, regardless of his belief as to its legality; and for such a battery the defendant carrier is absolutely liable.

The principle that exempts from liability one who at an officer's command assists him in making an illegal arrest, if applicable also to the making of an illegal search of the person, can have no protective operation here since it does not appear that Amos requested such assistance from Whitman.

Counsel for appellee have framed their argument upon the assumption that whether or not defendant's agent Whitman knew or believed that Amos was acting as an officer in his dealings with plaintiff was a jury question, or else that it was Whitman's duty, when apprised of those dealings, to make inquiry as to their official character and validity. These theories of the law are without merit, as already indicated, supra.

The duty of intervention by the carrier between a passenger and a known officer of the law does not arise until the carrier's servant is informed or has just reason to believe that the officer is not acting officially, or else that he is wrongfully acting colore officii. The burden is upon the plaintiff to show such knowledge, and it cannot be assumed. In the absence of evidence to show it, the plaintiff fails to show the initiation of the duty to intervene and protect her.

In the instant case there is nothing to show such knowledge by Whitman, whether the testimony of plaintiff's or defendant's witnesses be taken as true. If plaintiff's own testimony is true, it tends to show merely that Whitman knew that she was accused or suspected of having stolen a watch, for which she was about to be searched by the officer. Her claim of innocence, and her appeal for intervention by Whitman, did not change the situation, so far as Whitman was concerned. Certainly none of these circumstances can support a rational inference that Whitman knew that the officer was acting either unofficially or wrongfully. These considerations lead to the conclusion heretofore stated that, as matter of law on the facts shown, plaintiff was not entitled to recover except upon the third count of the complaint, and only upon the finding of fact that the agent Whitman directed, instigated, or in some way affirmatively participated in the search of plaintiff without her consent.

It follows that the trial court erred in not giving for defendant the general affirmative charge upon each of the other counts of the complaint. The judgment will be reversed, and the cause remanded.

Reversed and remanded.

Dowdell C. J., and McClellan and Sayre, JJ., concur. Sayre, J., is of the opinion that the overruling of the demurrers to the second and fifth counts of the complaint was prejudicial error which would require a reversal of the judgment.