# CHARLESTON.

ANANIA v. NORFOLK & WESTERN RAILWAY CO.

Submitted September 28, 1915.   Decided November 9, 1915.

1. CARRIERS—*Injury to Passenger—Unlawful Arrest and Expulsion—Liability of Carrier.*

   Upon a carrier the law imposes the duty to exercise reasonable care to protect passengers from unlawful arrest and expulsion from its trains, whether caused by strangers or intruders or by its agents and servants; and if, by failing or refusing to afford protection, such unlawful arrest and expulsion is effected, the carrier must respond in damages therefor to the person so injured when its servants know, or in the exercise of ordinary care ought to know, the arrest and expulsion is unlawful.   (p. 107).

2. SAME.

   A carrier is not liable in damages for the failure of its agents to prevent an arrest and removal of a passenger from its train by an officer of the law acting under proper authority. But if such agent knows, or in the exercise of reasonable diligence could have known, the arrest was unwarranted and unjustifiable or without sufficient foundation or cause, and fails to protest, or, without the use of force, to prevent such arrest, the carrier is liable, and must respond in damages to the person so unlawfully arrested and removed from its train.   (p. 107).

3. JUDGMENT—*Bar—Criminal Proceedings—Expulsion of Passenger—Action for Damages—Defense.*

   Though convicted and imprisoned by the arresting officer, a justice of the peace, the judgment will not, in such circumstances, bar recovery of damages against the carrier.   (p. 111).

4. TRIAL—*General Verdict—Responses to Interrogatories—Consistency.*

   To be inconsistent with the general verdict, responses to inter-

77 W. Va.

rogatories propounded to a jury upon the trial of a case must exclude every conclusion not in accord with such verdict. (p. 112).

Error to Circuit Court, McDowell County.

Action by Frank Anania against the Norfolk & Western Railway Company. Judgment for defendant, and plaintiff brings error.

*Reversed and rendered.*

*Cook, Litz & Harman* and *G. W. Howard,* for plaintiff in error.

*Wyndham Stokes, John H. Holt,* and *Theodore W. Reath,* for defendant in error.

LYNCH, JUDGE:

Awarded fifteen hundred dollars damages by a jury upon the trial of an action against the Norfolk & Western Railway Company for ejecting him or permitting him to be ejected unlawfully from its train, while a passenger thereon from Columbus, Ohio, to Iaeger, McDowell County, Frank Anania assigns as erroneous the action of the trial court in granting defendant's motion for a new trial.

Charles Near, his wife and plaintiff were traveling companions from Albany, New York, to their destination in this state. They were Italians except Mrs. Near; but, as witnesses testified, they were unacquainted prior to their meeting in Albany for the purpose of the trip. Anania occupied the second or third seat in the rear of the Nears. After the train had left Williamson, that place being the terminal point for exchange of train crews, the conductor awakened the Nears and of them demanded tickets. They had tickets, as had also Anania, entitling them to transportation to their destination. As they were unable to find them promptly upon demand, a colloquy arose between them and the conductor, terminating in a threat of ejection unless the tickets were produced or fare paid. Mrs. Near then became violently abusive and used vulgar and coarse language. A justice of the peace, also a passenger, voluntarily projected himself into the altercation, and, he says, proclaimed his official authority. When vigorously assaulted, if indeed he did not commit the first breach of the

peace himself, he ejected both the Nears and Anania, and caused them to be handcuffed and committed to the jail of the county until the next morning, when, without trial or production of evidence or opportunity therefor, he fined and sentenced Anania to imprisonment and to labor on the public roads.

With Anania the conductor had no conversation, did not speak to him, did not demand his ticket. Nor did Anania participate in the quarrel with the Nears and the assault by and upon them. He said nothing and did nothing, except to arise from his seat and indicate a purpose to move forward toward his companions and the officer in charge of the train. But, being advised or directed to sit down, he resumed his seat without protest, and made no further demonstration of any character, hostile or otherwise, and offered no resistance to the arrest and expulsion. To him no witness attributed a vulgar word or any boisterous or turbulent conduct. He was faultless as any other passenger except the actual participants in the struggle. He made no hostile movement against any one, and, when reseated, remained only an interested observer of the nsuing occurrences. What he may have done, if permitted to go forward, was merely conjectural. His attitude was not malevolent or demonstrative. No testimony showed it to be of that character. No real attempt was made to show, and if made it failed of its purpose, that his temper indicated an intent to engage in the affray. It was insufficient to generate an inference of hostility. For aught that appears to the contrary, his object may have been to quiet his companions or assist them in finding their tickets. That they had tickets he knew. Theirs and his were purchased at the same time and place and for the same destination. He had his own, and reasonably he could, and perhaps did, assume they had theirs, as indeed the uncontradicted proof clearly demonstrates.

The three persons were passengers entitled to passage over defendant's road to Iaeger, unless by gross misconduct one or more of them forfeited such right. While such passengers, they were entitled also to that high degree of care by law imposed upon a carrier to protect and safely deliver them pur-

suant to the terms of the contract of carriage.  *Gillingham* v.
*Railroad Co.*, 35 W. Va. 588.

Defendant, however, attempts to exonerate itself from lia-
bility on the ground that, as the arrest and expulsion were
caused by a justice of the peace, without the participation
of its agents or any of them, it is not chargeable in damages;
and to sustain this proposition it cites *Bowden* v. *Railroad Co.*,
144 N. C. 28, 12 Ann. Cas. 783.   Though stated in general
terms, the principle announced in the syllabus of that case
must be interpreted in the light afforded by its facts.   The
arrest was made by an officer authorized to apprehend and
maintain in custody plaintiff, then eloping with a sixteen
year old girl in contemplation of marriage against the will
of her nearest kin.   They were attempting to elude the vigil-
ance of her brother, who was in pursuit.   Fearing detection
the young man concealed himself in the toilet room of the
coach.   The only knowledge of the circumstances the con-
ductor possessed the officer making the arrest furnished him.
He knew the officer was what he professed to be, and the source
of his authority.   He also knew the effort made towards con-
cealment; and the only assistance rendered by him was the
delivery of the closet key.   Read in a view of these facts, the
syllabus quoted by counsel states only the general rule as to
the non-liability of carriers in similar circumstances.   Many
authorities restate the principle to be that where the alleged
neglect consists only in the failure of the conductor of the
train to resist the known officers of the law in carrying out
their purpose to arrest the passenger no liability is chargeable
to the carrier.   Generally this exemption is based upon the
theory that a train for the carriage of passengers is not in-
tended as a place of refuge for escaping criminals.   The para-
mount importance of the maintenance of the law and the
prompt execution of its processes and mandates affords the
only substantial basis for excusing a carrier from liability in
suffering indignity imposed by the arrest of an innocent per-
son while a passenger on one of its trains.  *Gillingham* v. *Rail-
way Co.*, *supra.*

This case presents a state of facts wholly different from the
facts of the case cited by defendant and others not so cited,

wherein carriers were held not chargeable in damages for the failure of their agents to interfere with an officer charged with the duty of executing legal processes and enforcing the criminal laws. They differ generally in the lack of knowledge on the part of such agents of the guilt or innocence of the person to be apprehended or of the illegality of the officer's acts or his right to execute the process, or of the character of the offense charged; and, while some of them require the agent to make due inquiries as to the functions of the process, the basis of the complaint and authority of the officer to execute the process, they do not excuse the carrier where the agent knows, or if reasonably prudent would have known, that if effected the arrest manifestly would be unjustifiable.

The duty not to interfere has its limitations. In *Railway Co.* v. *Crosby,* 183 Ala. 237. 62 So. 889, the principle announced was that when permitted by the agent in charge of its train a carrier is not liable for the arrest of a passenger by an officer of the law in the exercise of an apparent authority, "unless the conduct of the officer is known to be illegal". In *Railroad Co.* v. *Ponder,* 117 Ga. 63, it is said that a railroad conductor can not obstruct the service of legal process on a passenger "except in cases where such interference is clearly not justified". While generally the law imposes no liability on a carrier to protect its passenger from arrest, yet where "the facts known to a conductor are such as to inform one of ordinary prudence that the arrest is unlawful" the carrier is liable. *Railroad Co.* v. *Byrley,* 152 Ky. 35, 153 S. W. 36. So we said in *Gillingham* v. *Railroad Co., supra,* the duty of protecting passengers from the negligence and wilful misconduct of fellow passengers and strangers devolves on the carrier's officers and agents, and it must protect them "so far as practicable". A conductor in charge has authority to control the movements of the train, the persons on it, and to compel obedience to the legal requirements and regulations prescribed by the company, and if injury results from his failure to exercise these functions the law imposes liability therefor. *Mayfield* v. *Railway Co..* 133 S. W. (Ark.) 168. And in the opinion in a Kentucky case the requirement for the safety of passengers was said to include protection from danger arising

from the negligence or thoughtlessness of passengers or other causes. *Traction. Co.* v. *Tolar,* 162 Ky. 50, 53. A passenger is entitled "to reasonable protection at the hands of a railway company, and from any and all unlawful assaults or imprisonment at the hands of its employes."

Rare indeed are cases involving the delinquency of corporate agents in circumstances similar to those shown by this record. They are unusual and exceptional. Diligent research therefor has proved unavailing, except as to those cited. Defendant relies only on the one case, and it has no controlling effect.

Here the officer unlawfully and unnecessarily interfered. There was nothing to justify his course, unless it was the vulgarity of Mrs. Near. No violence was attempted or committed until he interfered, and but for his intrusion, none may have occurred. Without the slightest protest by the conductor and in his presence, the justice, as soon as he reached the seat occupied by the Nears, began to inflict violent blows on Charles Near, injured his hand while administering the "strong arm", beat and wounded the passenger assailed, and with the assistance of a member of the train crew expelled him from the car, threw him on the ground, disabled and stunned by such vigorous and inexcusable treatment. Then returning he ejected plaintiff also, though with less manifestation of physical violence. The conductor knew, or if reasonably diligent ought to have known, that whatever may have been the conduct of the Nears, Anania had done no act and said no word indicative of an intent to disobey any lawful demand made upon him or any rule or regulation of the company, or to project himself into the quarrel or combat between the trainmen and justice on the one hand and his companions on the other. The testimony presents his as free from default as any other passengers save those actively participating in the assault. Though thus innocent and free from the appearance of unlawfulness and from conduct justifying the treatment received, he was deprived of a carriage for which he had made due compensation in advance, and of that protection which the law requires of a carrier, without any attempt to prevent the indignity unlawfully imposed upon him.

Upon this state of facts, not contradicted, but clearly established by competent testimony, the jury based its verdict; and we can not say its finding is not in accordance with the evidence before us. Nor does defendant contend that the proof is insufficient to sustain the verdict. The attempted exoneration rests on three grounds only: one that already considered, the legal phase of the case; one, the trial and judgment of the justice who caused the arrest and ejection; the other, inconsistency of the general and special findings.

On the second proposition, counsel cited *Vinal* v. *Core,* 18 W. Va. 1. That was an action to recover damages for malicious prosecution. The judgment was admissible in evidence only on the question of probable cause; and, on that question, it was not controlling, because merely prima facie evidence of such cause, and liable to be rebutted by proof. However, as observed, here no trial was had, no opportunity for defense afforded, no witnesses called to testify and none did testify. The justice deemed a trial unnecessary. On information derived from his own violent intrusion into a matter that did not demand his intervention, he adjudged guilty an accused in whom no other witness having the same opportunity as he discovered any unlawfulness justifying restraint and punishment. Nor, except inferentially, do we know whether any judgment was indeed rendered. It was not put in issue by any pleading or proof. No copy was introduced in evidence. References to it were merely vague and incidental. If not necessary to plead it, it was necessary to prove the judgment of conviction and sentence. It was evidentiary, but not conclusive. Defendant was not a party to the proceeding, and not bound by it. It settled nothing involved in this action.

Had the conductor performed the duties by law exacted of him as an agent of the carrier, or as such agent protested against the unlawful arrest, or made an honest effort to prevent it, or offered plaintiff the protection to which he clearly was entitled, an arraignment and trial indeed would have been unnecessary. He was in a situation to observe, and if he had exercised a reasonable degree of diligence in the performance of the service confided to him he would have observed and known, Anania was innocent of any legally punishable

offense. Nor does he say he was not cognizant of plaintiff's innocence, or of the unlawfulness of the arrest. He offered no excuse for non-interference, though he undertook to establish his absence at the time Anania was arrested and expelled from the train. But the jury's response to the interrogatories propounded at defendant's request showed his presence and tacit assent to the arrest and expulsion and participation in it.

Nor were the responses and the general verdict inconsistent, as counsel contend. To the first inquiry, the jury replied, in substance, that the conductor failed to protect plaintiff against an unlawful arrest; and, to the second, that the trainmen caused the arrest, made complaint, and engaged in the prosecution before the justice. While the evidence may not warrant the last conclusion, still want of proof does not establish lack of consistency. To be inconsistent, the answers must exclude every conclusion not in accord with the general verdict. *Manufacturing Co.* v. *Insurance Co.*, 35 W. Va. 666. There is in this instance no such antagonism. The responses do not conflict with the general result of the trial.

There was evidence on which, if given credence, the jury could, and from the verdict and answers evidently did, find that the conductor actually did assist in expelling plaintiff. Plaintiff so testified, as also did Charles Near; and neither of them was contradicted by any other witnesses, though some of them did testify that they did not see the conductor render such assistance. He swore he was not present when plaintiff was ejected; the justice swore he was present, but further said he did not observe whether the conductor or any other member of the train crew assisted in the ejection. He seemed not to know whether any aid was rendered by any person officially charged with the operation of the train.

For reasons stated, the order entered here will reverse the judgment, reinstate the verdict, and thereon render judgment for plaintiff, with interest as required by law.

*Reversed and rendered.*