# CHARLESTON.

## CLARK v. NORFOLK & WESTERN RY. CO.

Submitted September 16, 1919. Decided September 23, 1919.

1. CARRIERS—*Should Not Protect Passenger Against Public Officer.*
   Although a carrier is obliged to use reasonable diligence to protect its passengers against unlawful assaults by other passengers, its own servants and third persons, its servants are under no duty to resist or interfere with a known officer in making an arrest of a passenger, unless they know or by reasonable diligence ought to know that the arrest is unlawful; neither are they bound to make inquiry into such known officer's authority. (p. 526).

2. SAME—*Intoxicating Liquors—When Search Warrant Invalid and no Protection to Carrier Expelling Passenger.*
   A warrant issued by a justice of the peace commanding search to be made of a certain passenger train, to ascertain if intoxicating liquors are being carried thereon contrary to law, is not proper evidence to be considered by the jury against the plaintiff in the trial of an action by him against the carrier for his unlawful expulsion from the car. Such warrant is void. (p. 531).

Error to Circuit Court, McDowell County.

Action by A. F. Clark against the Norfolk & Western Rail-

way Company.   Verdict for plaintiff was set aside on defendant's motion, and plaintiff brings error.

*Affirmed.*

*Froe & Capehart*, for plaintiff in error.
*Sale & Tucker*, for defendant in error.

WILLIAMS, JUDGE:

In an action of trespass on the case plaintiff recovered a verdict against defendant for $500.00, which, on motion of defendant, the court set aside, and plaintiff brings error asking that the judgment be reversed and judgment entered here on the verdict.

Plaintiff purchased a ticket from Ironton,. Ohio, to Iaeger, West Virginia, and boarded one of defendant's trains as a passenger on December 16, 1916.   He and a number of others had gone to Ironton on the day previous to purchase liquor. It was not then unlawful for a person to carry more than two quarts of liquor into the state for personal use, provided the container thereof was properly labeled showing the kind and quantity thereof.   A coach was attached to the rear of the train just behind a Pullman car at Ironton for the accommodation of those passengers who were carrying liquor, and plaintiff was told to get in that coach and did so.   In fact that coach seemed to have been filled with such passengers. Plaintiff admits he had sixteen quarts of whiskey and one quart of alcohol in a suit case, but swears it was properly labeled, and the jury evidently believed him, which they had a right to do, although his testimony on this point is contradicted by other witnesses for defendant.   When the train arrived and stopped at Williamson, West Virginia, which is the end of one of defendant's divisions where a change of crews is made, and which is a long distance west of Iaeger, the prohibition officer and his deputies, four or five in number, armed with pistols, entered the coach and forced a number of the passengers, including plaintiff, to alight. Three or four of them, but not the plaintiff, were arrested for not having labels on their packages of whiskey.   Plaintiff did not attempt to reboard the train, but spent the night

at a hotel and took another train the next morning for Iaeger. Plaintiff swears the train stopped some distance before it reached the depot at Williamson and quoting his language, says ''some men come in and told us to get off that train, and drawed their guns and some of them unloaded, and I didn't have time to get off until after the train had done started out. I went on into Williamson and they made us get off.'' He was asked, ''Who made you get off? A. Well there was the brakeman and these here officers.'' And being asked if he was frightened, replied, ''Yes sir, I was scared not to get off the train after I didn't know what they were going to do to me.'' He further asked what the brakeman did to him, and replied: ''The brakeman didn't do anything, just asked me to go ahead off.'' And the question being repeated, he added: ''to further any more trouble,'' meaning, of course, to avoid any further trouble. Some of plaintiff's answers are hardly intelligible, but it fairly appears from his testimony that when the officers entered the car it caused a great deal of commotion among the passengers, some of whom got off immediately and others a little later, after the train had pulled up to the depot, and that none of the train crew protested or did anything to protect plaintiff from being ejected. Plaintiff's counsel rely on the cases of *Gillingham* v. *Ohio River R. R. Co.*, 35 W. Va. 588, and *Anania* v. *Norfolk & Western Ry. Co.*, 77 W. Va. 105, in support of their contention that, under the state of facts established by plaintiff's evidence, the defendant is liable; that a carrier is under obligation to protect its passengers from unlawful arrest or ejection from its train.

In the Gillingham Case the conductor of the train actually caused plaintiff's arrest for an offense committed in his presence, and which, by the exercise of proper diligence, he was bound to know plaintiff was innocent of. After sending for the officer to make the arrest the conductor pointed out Gillingham to him as the guilty person, whereas the guilty party was shown to be another passenger occupying a seat behind him. The assault for which the arrest was made was com-

mitted on the conductor, and he pointed out to the officer the wrong man as the one who had committed it.

In the Anania Case, the officer, who happened to be on the train at the time, arrested Anania and some other passengers for disorderly conduct, which occurred in the presence of the conductor and the officer. Anania had been guilty of no misconduct. The opinion in that case states that the conductor knew, or if reasonably diligent ought to have known that fact. It was clearly the duty of the conductor in that instance to have protested, at least, against Anania's arrest.

But here the facts are quite different. It is a fact, proven and not disputed, that the conductor and brakemen in charge of the train all knew that the men who forced plaintiff to alight were officers, and in such case the law imposes no duty upon the carrier or its servants or agents to inquire into the officers' authority, or substitute their opinions for his, or to protest against his arresting a passenger. A passenger train is not intended as a place of refuge for criminals, and unless a passenger is arrested for an offense of which the carrier's agent knew or, by proper diligence, ought to have known he is not guilty, he is not obliged to interfere or protest against the arrest. The rule, however, is different where the carrier's servants know or by the exercise of proper diligence ought to know that the arrest of the passenger is unlawful, as was the case in *Anania* v. *Norfolk & Western Ry. Co., supra.*

In *Bowden* v. *Atlantic Coast Line Ry. Co.,* 144 N. C. 28, it appears that plaintiff ran away with a sixteen year old girl for the purpose of marrying her. They were passengers on defendant's train. In response to a telegram from a brother of the girl to the chief of police of Jacksonville, North Carolina, notifying him that the parties had eloped, the moment the train arrived at Jacksonville he boarded the train to make the arrest. Apprehending his arrest, plaintiff, without the knowledge of the conductor, took refuge in the water closet and bolted the door on the inside. The officer demanded the key of the conductor and he instructed the porter to deliver it to the officer. Finding he could not open the door with the key, the officer presented his pistol

through the window of the closet and compelled plaintiff to unbolt the door and surrender. He then took the couple from the train. The court held the carrier not liable, and in its opinion says that plaintiff having concealed himself in the closet without the knowledge of the conductor, the fact that the conductor surrendered the key is no evidence of a purpose to aid and abet the officer, nor is the fact that the train remained at the station a few minutes longer than usual any evidence of the conductor's intent to aid the officer in making the arrest. Says the court: "The most that can be said is that the conductor did not resist the officers in executing their purpose to arrest plaintiff. It is not the duty of a conductor to resist a known officer of the law in making an arrest."

In this case the brakeman's advice to plaintiff to "go ahead off," if he said it, which the brakemen all deny and plaintiff was not able to identify the person who, he says, told him, is not evidence of any intent to aid the officers. According to plaintiff's testimony the request was made simply to avoid further trouble. There is no evidence whether or not defendant's servants knew that plaintiff's suit case was properly labeled as containing whiskey, or that they knew why the officers ejected him from the car. Knowing that they were officers, the defendant's agents were under no duty to inquire into the legality of their acts. The following authorities are in point and support the principles announced in this opinion: 4 R. C. L. 1194; 10 C. J. 908; *Nashville, C. & St. L. R. Co.* v. *Crosby,* 183 Ala. 237; *Louisville & Nashville R. Co.* v. *Byrley,* 152 Ky. 35; *Brunswick & Western R. Co.* v. *Ponder,* 117 Ga. 63; and *Thompkins* v. *M. K. & T. Ry. Co.,* 211 Fed. 391.

Counsel for plaintiff insist that I. W. Clark, although appointed by the Governor of the State, was a special agent of the railway company and assisted the officers in ejecting plaintiff and other passengers from the train. Said Clark was not acting as agent of the railway company on this occasion. He swears he was deputized by Mr. Keadle and Mr. Slater, the prohibition officers, to assist them, and his testimony is not denied. He was acting outside of his duty to

the railway company and as a deputized officer, and his assistance in expelling plaintiff constitutes no ground of liability on defendant.

The justice's warrant under which the prohibiton officers acted in searching the car was introduced and read as evidence over the objection of plaintiff. This was error. The law does not authorize a justice of the peace to issue his warrant commanding search to be made of the coaches of a passenger train in transit, to ascertain if liquor is being carried therein in violation of the law. A passenger train in transit is not one of the places mentioned, or contemplated by section 9, chapter 32A, Code 1918, of which search may be made under the provisions of that section.

Under the state of evidence appearing from the record, defendant's peremptory instruction should have been given, and the court was justified in setting aside the verdict and ordering a new trial, and we, therefore, affirm the judgment and remand the cause for a new trial.

*Affirmed.*